NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231026-U

NOS. 4-23-1026, 4-23-1043 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 14, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* N.G. and J.M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Ford County |
| Petitioner-Appellee, | ) | Nos. 19JA3 |
| v. | ) | 19JA4 |
| Kristy M., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Matthew J. Fitton, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, holding the trial court did not err in terminating respondent's parental rights.

¶ 2    In March 2023, the State filed a petition to terminate the parental rights of respondent, Kristy M. (Mother), as to her minor children, N.G. (born March 2017) and J.M. (born September 2011). Following a hearing on the State's petition in June 2023, the trial court found Mother an "unfit person" within the meaning of section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)) and, after finding it was in the minors' best interest, terminated Mother's parental rights.

¶ 3    On appeal, Mother argues the trial court erred in terminating her parental rights because the court's unfitness finding was against the manifest weight of the evidence. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On September 10, 2019, the State filed a petition for adjudication of wardship alleging N.G., age two, and J.M., age seven, were neglected minors. The State alleged N.G. resided in an environment injurious to her welfare (705 ILCS 405/2-3(1)(b) (West 2018)) and was without supervision for an unreasonable period of time without regard for her mental or physical health, safety, or welfare (705 ILCS 405/2-3(1)(d) (West 2018)) in that she left the residence and wandered into the parking lot of a nearby business. The State also alleged J.M. resided in an environment injurious to his welfare (705 ILCS 405/2-3(1)(b) (West 2018)) in that (1) Mother and J.M.'s father (who is not a party to this appeal) encouraged J.M. to commit a theft and (2) J.M. was left alone in a supervisory role over N.G. on the day N.G. left the residence (705 ILCS 405/2-3(1)(d) (West 2018)).

¶ 6        On April 9, 2021, Mother stipulated to the allegations in the State's neglect petition and the trial court adjudicated the minors neglected (705 ILCS 405/2-3(1)(b) (West 2020)). On September 21, 2022, in a separate dispositional order, the court found Mother unfit, unable, and unwilling for reasons other than financial circumstances alone to care for the minors, made them wards of the court, and placed their custody and guardianship with the Illinois Department of Children and Family Services.

¶ 7        On March 28, 2023, the State filed a petition to terminate Mother's parental rights to both minors. The State alleged Mother was unfit because (1) she failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)) and (2) she failed to (a) make reasonable efforts to correct the conditions which were the basis for the removal of the minors from her (750 ILCS 50/1(D)(m)(i) (West 2022)) or (b) make reasonable progress toward the return of the minors to her within a nine-month period following adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2022)).

The State alleged a nine-month period of April 9, 2021, to January 9, 2022 (the relevant time period).

¶ 8    During the June 2023 fitness hearing, Lutheran Social Services of Illinois caseworker Damieon Shaw testified he had been the minors' caseworker for approximately 9 or 10 months. Since Shaw was assigned to these cases, Mother had no visits with N.G. Shaw believed Mother was having visits with J.M. Mother contacted Shaw once to request visitation with N.G. but never followed up with visits. Since Shaw became the caseworker, there had been one administrative case review, in which Mother did not participate. While Mother engaged in services, "there was a lot of inconsistency in her services." Shaw acknowledged he "did receive some certificates of completion from some services at least two years old, but then the visits had stopped." Shaw agreed the family was no closer to reunification at the time of the hearing than it was at the time of adjudication. On cross-examination, Shaw said correspondence from the agency sent to Mother's address in Gary, Indiana, was neither returned nor responded to. This correspondence contained instructions for establishing contact with a new caseworker so services could be completed and information about the upcoming administrative case review, in which Mother could participate either through phone or video. Shaw stated the fact Mother resided in Indiana did not in any way hinder her from following through with visits. Mother called Shaw twice in the month preceding the fitness hearing. However, she was "very argumentative" during those conversations and did not inquire about what she needed to do "to get things rectified."

¶ 9    Mother testified she was not able to participate in visits from July 2022 to either January or February 2023 due to being incarcerated in Indiana. Mother moved to Indiana in 2021. Mother admitted moving to Indiana did not make it difficult for her to engage in services. When asked if she followed through with services, Mother stated, "I tried to do what I could."

On cross-examination, Mother testified she did not contact the agency to request visitation until two weeks before the fitness hearing despite being released from jail in either January or February 2023.

¶ 10    The trial court found Mother unfit on all three grounds alleged in the State's termination petitions. At the conclusion of the September 2023 best interest hearing, the court found it was in the best interest of the minors to terminate Mother's parental rights.

¶ 11    This appeal followed.

¶ 12                    II. ANALYSIS

¶ 13    On appeal, Mother argues only that the trial court's unfitness determination was against the manifest weight of the evidence. She does not challenge the court's best interest finding.

¶ 14    The Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2022)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2022)) govern how the State may terminate parental rights. *In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). Together, the statutes outline two necessary steps the State must take before terminating a person's parental rights—the State must first show the parent is an "unfit person," and then the State must show terminating parental rights serves the best interest of the child. *D.F.*, 201 Ill. 2d at 494-95.

¶ 15    " 'The State must prove parental unfitness by clear and convincing evidence.' " *In re A.L.*, 409 Ill. App. 3d 492, 500, 949 N.E.2d 1123, 1129 (2011) (quoting *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067, 808 N.E.2d 596, 604 (2004)). The Adoption Act provides several grounds on which a trial court may find a parent "unfit." 750 ILCS 50/1(D) (West 2022). Despite several potential bases for unfitness, "sufficient evidence of one statutory ground *** [is] enough to support a [court's] finding that someone [is] an unfit person." (Internal quotation marks

omitted.) *In re F.P.*, 2014 IL App (4th) 140360, ¶ 83, 19 N.E.3d 227; see *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064, 859 N.E.2d 123, 135 (2006) ("A finding of unfitness will stand if supported by any one of the statutory grounds set forth in section 1(D) of the Adoption Act.") (citing *In re D.D.*, 196 Ill. 2d 405, 422, 752 N.E.2d 1112, 1122 (2001)).

¶ 16 This court pays " 'great deference' " to a trial court's fitness finding " 'because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility.' " *A.L.*, 409 Ill. App. 3d at 500 (quoting *Jordan V.*, 347 Ill. App. 3d at 1067). We "will not reverse a trial court's fitness finding unless it was contrary to the manifest weight of the evidence, meaning that the opposite conclusion is clearly evident from a review of the record." *A.L.*, 409 Ill. App. 3d at 500.

¶ 17 Under section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)), a parent may be found unfit if she fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." Reasonable progress exists when the evidence shows "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991). A "parent's failure to substantially fulfill *** her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2022). Additionally, the "failure to make reasonable progress" includes the failure to correct *any* condition that would prevent the trial

court from returning custody of the child to the parent. *In re C.N.*, 196 Ill. 2d 181, 216, 752 N.E.2d 1030, 1050 (2001).

¶ 18 Here, the evidence established Mother failed to substantially fulfill her obligations under her service plan during the relevant time period. Shaw testified about the "inconsistency" with which Mother participated in services and about being notified of Mother completing only "some" services. When asked about her engagement in services, Mother testified she "tried to do what [she] could," thereby admitting she did not complete the required services. She also admitted relocating to Indiana did not make it difficult to engage in services. To the extent Mother engaged in services, her progress towards their completion was not sufficiently demonstrable or of the requisite quality for the trial court to return custody of the minors to her in the near future. See *L.L.S.*, 218 Ill. App. 3d at 461. The evidence established the family was no closer to reunification at the time of the hearing than it was at the time of adjudication.

¶ 19 Based on the evidence presented at the fitness hearing, the trial court's finding Mother failed to make reasonable progress toward the return of the minors during the relevant time period was not against the manifest weight of the evidence, as the opposite conclusion is not clearly evident. See *A.L.*, 409 Ill. App. 3d at 500. Because we can affirm the court's unfitness finding on this basis, we need not consider the other statutory grounds upon which the court found Mother unfit. See *F.P.*, 2014 IL App (4th) 140360, ¶ 83 ("[S]ufficient evidence of one statutory ground *** [is] enough to support a [court's] finding that someone [is] an unfit person." (Internal quotation marks omitted.)).

¶ 20 III. CONCLUSION

¶ 21 For the reasons stated, we affirm the trial court's judgment.

¶ 22 Affirmed.